IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.G. CROSTHWAITE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LML ENTERPRISES, INC., et al.,<br><br>    Defendants. | Case No.: 13-cv-0740 JSC<br><br>**ORDER REASSIGNING CASE TO DISTRICT JUDGE; REPORT AND RECOMMENDATION THAT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART AND DENIED IN PART** |

In this enforcement action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs bring a Motion for Default Judgment ("Motion") seeking entry of default judgment, an award of outstanding employee benefit contributions, liquidated damages and interest, and attorneys fees and costs. The Court finds that the Motion is suitable for determination without oral argument. *See* Civil Local Rule 7–1(b). Because the Court has not obtained consent from Defendant pursuant to 28 U.S.C. § 636, it ORDERS the case reassigned to a District Judge. For the reasons given below, the Court recommends that Plaintiffs' Motion be GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiffs comprise the following trust funds ("Trust Funds"): The Operating Engineers' Health and Welfare Trust Fund; Pension Trust Fund for Operating Engineers (which includes the Pension Plan for the Pension Trust Fund for Operating Engineers, and the Operating Engineers Annuity Plan); Pensioned Operating Engineers' Health and Welfare Fund; Operating Engineers and Participating Employers Pre-apprenticeship, Apprentice and Journeymen Affirmative Action Training Fund; and Heavy and Highway Committee. The Trust Funds are employee benefit plans as defined by the ERISA, § 3(3), 29 U.S.C. § 1002(3). F.G. Crosthwaite and Russell E. Burns are Co-Chairmen of the Joint Boards of Trustees for these Trust Funds with authority to act on behalf of all Trustees.[1]

Defendant LML Enterprises, Inc. ("LML"), a corporation, is an employer within the meaning of ERISA Section 3(5) and 29 U.S.C. § 1002(5).  (Dkt. No. 1 ¶ 3.)  Defendant LML is a signatory to the Northern California Master Agreement ("CBA") between Operating Engineers Local Union No. 3 and Associated General Contractors of California, Inc. Association of Engineering Construction Employers Engineering and Utility Contractors Association Industrial Contractors, UMIC., Inc.  (Dkt. No. 1 ¶ 10; Dkt. No. 14, Ex. B.)  The CBA incorporates the relevant trust agreements ("Trust Agreements"), establishing each of the Trust Funds.  (*Id.* at ¶ 13.)  The Trust Agreements incorporated into the CBA require Defendant to make regular contributions to the Trust Funds, who are third party beneficiaries of the CBA, based on the hours worked by Defendant's employees.  (*Id.* at ¶¶ 10-14.) Defendant further agreed to pay liquidated damages for each delinquent contribution; specifically, liquidated damages incur at 20% of the delinquent contributions if a lawsuit is filed to collect delinquent contributions.  (Dkt. No. 14, Ex. B § 12.13.01.)  In addition, interest accrues on the amount of the unpaid contributions from the delinquent date until the

---

[1] Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("Union") is also a party; however, the Union "is represented by counsel herein for the limited purpose of collecting union dues owing as part of the subject contribution claims of Plaintiffs, and not for any other cause of action."  (Dkt. No. 1 ¶ 2.)

dates they are paid in full at the rate of 10% per year. (*See id.* at § 12.13.02.) Defendant is also a signatory to the Independent Northern California Construction Agreement of the Operating Engineers Local Union No. 3 ("Agreement") dated September 20, 2011. (Dkt. No. 14, Ex. A.) The Agreement incorporates the CBA by reference.

The Complaint, filed February 20, 2013, alleges that Defendant has failed to submit contribution reports and payments for hours worked by its employees during the months of December 2012 and January 2013 and further failed to submit payment for contributions as reported for the months of June through November 2012. (Dkt. No. 1 ¶ 17.)

The Complaint further alleges that individual Defendant Sean Christopher Lyons ("Lyons") "directs payment of contributions to the Trust Funds and also has individual liability for all amounts claimed herein, pursuant to the terms of the Independent Northern California Construction Agreement." (*Id*. at ¶ 3.) In particular, individual liability is premised on Lyons having "personally guaranteed all amounts claimed [], pursuant to the terms of the Independent Northern California Construction Agreement." (Dkt. No. 1 ¶ 12.)

Defendants failed to answer or otherwise appear and Defendants default was entered by the Clerk pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on April 15, 2013. (Dkt. No. 8.) Plaintiffs filed the present Motion on July 25, 2013. In the Motion, Plaintiffs request: 1) an order directing Defendant to pay $77,220.93 in unpaid contributions, liquidated damages, and interest;[2] 2) an award of attorney's fees in the amount of $3,722.50, costs in the amount of $752.50, and "additional attorney's fees" in the amount of $1,260.00;[3] and 3) for the Court to retain jurisdiction. (Dkt. No. 16.) Plaintiffs served Defendants with the Motion by mail. Defendants have not appeared or responded to the Motion, and the deadline for opposing the motion has passed. *See* Civil L.R. 7-3(a).

---

[2] This amount was amended in response to the Court's September 3, 2013 Order to Show Cause seeking additional information regarding calculation of unpaid contributions. (Dkt. No. 24 at 6.)

[3] Plaintiffs state that these additional fees are "estimated in connection with additional filings in this matter, preparation and attendance at hearing on Motion." (Dkt. No. 24 at 6.)

3

**DISCUSSION**

**I.     Jurisdiction and Service of Process**

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in Federal court) and § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). The Court has personal jurisdiction because LML is a California corporation that engages in business activities in the Northern District of California. Personal jurisdiction over Defendant Lyons arises from service upon him in California. (*See* Dkt. Nos. 6); *Burnham v. Super. Ct.*, 495 U.S. 604, 610–11 (1990).

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. Under California law, a corporation may be served by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. *See* Cal. Civ. P. Code § 416.10(a). Here, Defendant LML's agent for service of process was personally served with the Summons and Complaint (Dkt. No. 5). Defendant Lyons was personally served (Dkt. No. 6). *See* Cal. Civ. P. Code § 415.10.

**II.     Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court should consider the following factors in determining whether to enter default judgment:

4

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the *Eitel* factors support default judgment. First, if the Motion were to be denied, then Plaintiffs would likely be left without a remedy given Defendants' failure to appear or otherwise defend this action. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Second, because Defendants have not answered the Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown. Third, Plaintiffs properly served Defendants and there is no evidence in the record that Defendants' failure to appear and otherwise defend this action was the result of excusable neglect. Fourth, the sum of money being sought by Plaintiffs is reasonable in that it is tailored to the specific misconduct of Defendants; namely, Defendants' failure to pay the contributions, which they allegedly assumed responsibility for under the CBA. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, although the seventh *Eitel* factor, which favors decisions on their merits, weighs against default judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the *Eitel* factors discussed above support Plaintiffs' Motion, the Court turns to the merits of Plaintiffs' substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). These factors essentially require Plaintiffs to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiffs' Complaint seeks a finding of liability as to LML and individual Defendant Lyons.

**A.     LML**

Plaintiffs claim that Defendant LML violated ERISA section 515 by failing to provide timely payments and reports pursuant to the CBA. These allegations are sufficient to state a

5

claim under Federal Rule of Civil Procedure 8(a).  The claims are further substantiated by the factual record.  As discussed above, Plaintiffs have offered evidence that Defendant entered into the CBA.  The CBA, through the Trust Agreements, imposes liability on delinquent employers for liquidated damages, unpaid interest and attorney's fees in addition to any unpaid contributions.  Plaintiffs' Complaint alleges that Defendant has failed to pay contributions due for work performed by its employees during the months of June through November 2012 and failed to report or pay contributions for the months of December 2012 and January 2013.  (Dkt. No. 1 at ¶ 17.)  However, Plaintiffs' motion for default judgment actually seeks unpaid contributions for work performed from June 2012 through June 2013 and includes contributions reports for the months of June 2012 through April 2013.[4]  (Dkt. No. 13 at 7-8 & Dkt. No. 14, Ex. D.)  Further, although Plaintiffs accounting submitted with their motion for default judgment contained inconsistences for the months of September through November 2012 and February 2013, Plaintiffs' response to the Court's Order to Show Cause (Dkt. No. 22) adequately explains the issues raised by the Court with respect to the months of September through November 2012, and Plaintiffs revised the amount claimed for February 2013.  (Dkt. No. 24 at 2-6.)  For the months of May and June 2013 for which the Plaintiffs have provided "estimated contributions" of $4,161.78, Plaintiffs have explained that this amount was calculated based on the Operating Engineers Local Union No. 3 Trust Funds Delinquency Collection Procedures as amended on August 26, 2012 which provides that contributions for unreported months are calculated based on the average contributions for the amounts due in the preceding three months.  (Dkt. No. 24, Ex. A.)

Accepting all factual allegations as true, Plaintiffs have stated a claim for relief as to Defendant LML.  LML breached its agreement with Plaintiffs when it failed to report or pay contributions for the periods listed above.  Defendant's default triggered the filing of the

---

[4] Plaintiffs do not explain the discrepancy between the Complaint and the Motion with regard to the contribution reports, but as the Complaint was filed in February 2013, Plaintiffs likely did not receive the majority of the contribution reports until after the lawsuit had already been filed.

6

instant suit for recovery, in response to which Defendant has taken no action. Based on the foregoing, the court recommends that default judgment be entered against LML.

### B. Individual Defendant Lyons

Plaintiffs contend that "Defendant Sean Christopher Lyons has personally guaranteed all amounts claimed herein, pursuant to the terms of the Independent Northern California Construction Agreement." (Dkt. No. 1 ¶ 12.) Although the Agreement includes provisions which would impose individual liability under certain circumstances, the Complaint does not cite to a particular provision or otherwise establish that Lyons agreed to be bound by the Agreement. Nor does the Complaint specifically allege that Lyons signed the Agreement and the signature on the Agreement is illegible, although Lyons is identified as the "Responsible Officer, Partner, etc." on the reverse side of the agreement. (Dkt. No. 14, Ex. A.) The Court therefore issued an Order to Show Cause as to whether Lyons personally signed the Independent Northern California Construction Agreement, and if not, what basis exists for the Court to hold him individually liable. (Dkt. No. 22.)

Plaintiffs' response to the Court's Order cites to Paragraph 12 of Agreement which provides that "If the Individual Employer is a corporation, its principal shareholder(s) or if the Individual Employer is a partnership, its general partners personally guarantee all payment of wages and fringe benefits, including fringe benefit contributions, liquidated damages, interest and collection costs, including but not limited to, attorney's fees and auditor/accountant fees." (Dkt. No. 14, Ex. A.) Although Plaintiffs do not indicate whose signature is on this document, they contend that Lyons personally completed the "Order to Bill" which was required to set up the employer account with the Union and the Trust Fund office and that he personally listed himself as the Responsible Officer /Partner. (Dkt. No. 24 at 2.) Further, the California State Licensing Board website lists Lyons as the CEO/President of LML Enterprises, Inc., which is identified as a suspended corporation. (Dkt. No. 15, Ex. A.) Plaintiffs further assert, without citation to the record, that "Sean Christopher Lyons is a 'principal shareholder' of LML Enterprises, Inc. (Dkt. No. 24 at 2.)

1    Courts have found defendants individually liable for, among other things, unpaid
2 contributions "[w]here a collective bargaining agreement specifically provides for personal
3 liability of a corporate officer." *Emp. Painters' Trust Health & Welfare Fund v. Bessey*, 2009
4 WL 3347588, at *3 (W.D. Wash. Oct. 15, 2009). In considering enforcement of labor
5 agreements, the Ninth Circuit advises that when "clear and specific language in a labor
6 agreement is at issue, federal courts are uniform in their strict interpretation of such
7 language." *Irwin v. Carpenters Health and Welfare Trust Fund*, 745 F.2d 553, 556 (9th Cir.
8 1984). In *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1191 (9th Cir. 1996),
9 the Ninth Circuit held that the president of the contracting employer who signed a "me-too"
10 agreement with the Union could be held individually liable despite that he "did not read the
11 agreements or understand their potential for imposing personal liability, [because] he bound
12 himself to those agreements when he signed the counterpart agreement. Personal liability in
13 such circumstances may be harsh for the signatory, but nothing suggests it is contrary to
14 federal labor policy." *See also Operating Engineers Pen. Trust v. Cecil Backhoe*, 795 F.2d
15 1501 (9th Cir. 1986) (likewise imposing individual liability on owner who signed short-form
16 agreements which bound his company to a master labor agreement).

17    Here, however, there is no allegation that Lyons signed the agreement. Indeed,
18 although the Court's OSC specifically identified the case law requiring an individual to have
19 personally executed the agreement at issue, Plaintiffs' response simply ignores the signature
20 issue. Instead, Plaintiffs contend that Lyons identified himself as the responsible party on the
21 "Order to Bill Employer Account for Negotiated Trusts" and he is publicly identified as the
22 CEO and President of LML which, Plaintiffs appear to suggest, places him in the position of
23 "principal shareholder." Plaintiffs cite to no authority to support individual liability where,
24 as here, the plaintiff apparently cannot allege that the individual executed the document that
25 purportedly imposes individual liability. To the contrary, "where courts have considered
26 whether to uphold personal liability provisions in collective bargaining agreements, the
27 question of whether the officer at issue signed the contract has been a key consideration."
28 *Employee Painter' Trust Health & Welfare Fund v. Landon Const. Grp.*, No.11-0068, 2011

8

WL 5864648, at *3 (W.D. Wash. Nov. 22, 2011) (collecting cases).  In *Landon*, the court declined to impose individual liability on individuals who did not sign the underlying collective bargaining agreement.  *Id.*; *see also Employee Painters Trust Health & Welfare Fund v. Pro-Tec Fireproofing, Inc.*, No. 06-1267, 2008 WL 5262775, at *2 (W.D. Wash. Dec. 16, 2008) (declining to impose personal liability on a corporate officer who did not sign the contract).  *But see W. Washington Painters Defined Contribution Pension Trust v. W. Indus., Inc.*, No. 09-826, 2012 WL 3704993, at *18 (W.D. Wash. Aug. 27, 2012) (holding after a bench trial that an individual employer need not have personally signed the trust agreements to be held personally liable where the agreements included a clause that clearly and explicitly stated "that corporate officers responsible for making contributions to the Trust Funds will be individually liable for payment of any delinquent contributions, liquidated damages, interest, audit fees and attorneys' fees and costs incurred in collection").

The Court therefore concludes that there is insufficient evidence—or even allegations--to impose individual liability on Lyons given Plaintiffs' inability to allege that he signed the Agreement.  Accordingly, as the sole theory Plaintiffs advanced for individual liability as to Defendant Lyons was that he personally guaranteed the amounts under the Agreement, the Court recommends that default judgment not be entered against Defendant Lyons.

### III.     Unpaid Contributions, Damages, and Interest

Plaintiffs seek to recover three categories of damages: (1) $53,322.08 in unpaid contributions, plus $10,122.62 in liquidated damages and $2,964.26 in interest on those unpaid contributions for June 2012 through April 2013; (2) $8,323.56 in estimated contributions, $1,664.72 in liquidated damages, and $29.64 in interest for May and June 2013; and (3) $746.22 in liquidated damages and $48.93 in interest assessed on the late contribution for May 2012 that Defendant eventually paid in full.  (Dkt. No. 24 at 5-6.)

In claims brought for delinquent contributions under ERISA, 29 U.S.C. § 1145, courts have awarded liquidated damages and interest under two different theories: 1) statutory damages, awarded as a matter of right under 29 U.S.C. § 1132(g), and 2) contract damages, provided the award comports with common law standards.  *See Idaho Plumbers and*

*Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 216-17 (9th Cir. 1989); *see also Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 797-98 (9th Cir. 1990) (per curiam) (following *Idaho Plumbers*).

### A. Statutory Award

Section 1132(g)(2) provides Plaintiffs with liquidated damages and interest as a matter of right on delinquent, unpaid contributions, but the liquidated damages must be equal to or less than 20 percent of unpaid contributions. 29 U.S.C. § 1132(g)(2); *see also, Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. California v. Atoll Topui Island, Inc.*, C 06-3059, 2007 WL 174409, at *7 (N.D. Cal. Jan. 22, 2007). ERISA requires an award of liquidated damages, in addition to the unpaid contributions, if "(1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers*, 875 F.2d at 215 (emphasis in original). Plaintiffs have clearly satisfied two of the three *Idaho Plumbers* factors. First, by virtue of this order, the fiduciary has obtained judgment in favor of the plan, and second, the Agreements provide for assessment of liquidated damages.

As for the remaining *Idaho Plumbers* factor, which requires unpaid contributions at the time of suit in order to recover statutory damages, Plaintiffs appear to suggest that since some unpaid contributions existed at the time the suit was filed they should be entitled to statutory recovery under section 1132(g) of all damages and interest for amounts assessed on late payments made prior to the suit. The express language of *Idaho Plumbers* does not answer whether a plaintiff may recover statutory liquidated damages on amounts paid late before the lawsuit was filed provided at least some – or even one – payment was unpaid at the time of filing. 875 F.2d at 215 (requiring merely that "unpaid contributions exist at the time of suit" for a mandatory award under ERISA).

There is conflict within this District on the specific meaning of the unpaid contributions requirement under *Idaho Plumbers*. Some decisions have interpreted the language quite literally, as have Plaintiffs here, in that as long as *any* unpaid contributions exist at the time of filing, the door is open for all damages assessed to an employer's account,

10

regardless of whether the contributions were eventually paid or remain outstanding. *See, e.g., Nw. Adm'rs., Inc. v. AD Auto. Distrib. Inc.*, No. 05-2880, 2006 WL 1626940, at *5 (N.D. Cal. June 12, 2006) (finding some unpaid contributions at time of filing sufficient for award of liquidated damages on additional, late but paid contributions); *Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992) (allowing recovery of statutory damages for late payments which came due after suit was filed, for reasons of efficiency). However, other decisions allowed statutory liquidated damages only for those payments that were actually unpaid when the suit was filed. *See, e.g., Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*, No. 10-1708, 2013 WL 2181532, at *5 (N.D. Cal. May 20, 2013) (awarding statutory liquidated damages under section 1132(g) as to those payments which were unpaid at the time suit was filed); *Bd. of Trs. of Laborers Health and Welfare Trust Fund for N. Cal. v. Perez*, No. 10-2002, 2011 WL 6151506, at *11 (N.D. Cal. Nov. 7, 2011) ("[C]ourts award damages on contributions that were paid, but paid late [before the suit] on the basis of contract law and federal common law rather than ERISA statutory law"); *Bd. of Trs. v. Udovch*, 771 F. Supp. 1044, 1047 (N.D. Cal. 1991) (holding that "mandatory liquidated damages under § 1132(g)(2) do not apply" to delinquent contributions paid by the time the suit is filed and requiring recovery under contract theory instead).

This Court recommends the latter approach as most consistent with the language of section 1132(g) and *Idaho Plumbers*. Section 1132(g) requires liquidated damages on the amount of unpaid contributions for which a judgment is obtained. 29 U.S.C. § 1132(g)(2)(C)(ii). Accordingly, Plaintiffs are entitled to statutory liquidated damages under section 1132(g) as to those payments which were unpaid at the time this suit was filed, but not as to those payments which were late, but paid, prior to filing suit. Thus, Plaintiffs are entitled to statutory liquidated damages and interest on the payments for June 2012 through May 2013 which were late and unpaid at the time the Complaint was filed.[5] (Dkt. No. 24 at

---

[5] While some of these liquidated damages were incurred after the filing of this lawsuit, the Court may nonetheless award Plaintiffs those damages. *See Roofers Local Union No. 81 v. Wedge Roofing*, 811 F.Supp. 1398, 1401-02 (N.D.Cal.1992); *see also Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan.10, 2008) ("Courts in the Ninth Circuit

11

1  5-6.)  In contrast, Plaintiffs are not entitled to *statutory* liquidated damages and interest for the
2  late, but paid, pre-litigation payment for May 2012.  The Court therefore recommends that
3  Plaintiffs be awarded the unpaid contributions for June 2012 through May 2013 in the amount
4  of $61,644.64, plus statutory damages and interest in the amount of $11,787.34 (damages)
5  and $2,993.9 (interest).

### B.  Contract Award

Even where liquidated damages are – or are not – mandated under section 1132(g), the Court may also enter judgment for liquidated damages and interest assessed on late contributions as a matter of contract.  *Idaho Plumbers*, 875 F.2d at 1275; *see also Atoll Topui Island, Inc.*, 2007 WL 174409, at *7.  The CBA provides for damages and interest on delinquencies.  Thus, as a matter of contract law, Plaintiffs may be entitled to liquidated damages and interest as to the late pre-litigation payment for May 2012.

Under *Idaho Plumbers*, liquidated damages are a valid award for breach of contract if (1) it is "very difficult or impossible" to calculate the harm that stems from the breach, and (2) the amount of damages is a "reasonable forecast of just compensation for the harm."  875 F.2d at 217 (internal citations omitted).

Contractual liquidated damages are appropriate here.  First, Plaintiffs' harm is sufficiently difficult to calculate.  *See Udovch*, 771 F. Supp. at 1048 ("When an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge.")  The parties' intentions determine whether the second requirement has been satisfied.  *Id.* (internal citations omitted).  They must have made a "good faith effort to set an amount equivalent to the damages they anticipate."  *Id.* (internal citations omitted).  Because the Court here is presented with a default, evidence regarding contract formation and the intent of the parties is extremely limited.  Nevertheless, because the Court is required to deem the Complaint's allegations admitted and consider the evidence

---

have made a limited exception to [the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due after a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA.") (emphasis in original).

12

in support of those allegations in the light most favorable to Plaintiffs, the question is whether the record supports the inference that the parties "made a good faith effort to establish a liquidated damages rate that would be a reasonable forecast of just compensation" when entering into the Agreements. *Atoll Topui Island*, 2007 WL 174409, at *8. The evidence is sufficient to draw this conclusion. The CBA provides that "the parties recognize and acknowledge that the regular and prompt payment of amounts due to the Trust Funds by Individual Employers is essential to the efficient and fair administration of the Trust Funds and the maintenance of plan benefits" and that "it would be extremely difficult and impractical to fix the actual expense and damage to the Funds for each Individual Employer's default." (Dkt. No. 14, Ex. B §§ 12.13.00 & 12.13.01.)

Accordingly, the Court recommends that Plaintiffs be awarded $746.22 in liquidated damages as a matter of contract on the late contribution for May 2012 that Defendant eventually paid in full.

### C. Interest

In addition, the Court concludes that Plaintiffs have adequately supported their request for interest on the unpaid contributions at a rate of 10% per annum. The CBA provides that unpaid contributions shall accrue interest charges at the rate of 10% per year. (*See* Dkt. No. 14, Ex. B, § 12.13.02.) Courts in this District have previously upheld much higher contractual interest rates in ERISA defaults. *See, e.g., Bd. of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 7446345, at *5 (N.D. Cal. Dec. 20, 2011) (1.5% monthly interest); *Bd. of Trs. of Laborers Health and Welfare Trust Fund for N. Cal. v. Perez*, 2011 WL 6151506, at *10 (N.D. Cal. Nov. 7, 2011) (1.5% monthly interest); *Atoll Topui Island*, 2007 WL 174409, at *9 (18% annual interest). The undersigned accordingly recommends that Plaintiffs be awarded their requested interest in full.

In sum, under the terms of the CBA as well as ERISA, Defendant is obligated to report and pay regular contributions and may be liable for liquidated damages and interest on any and all delinquencies. Defendant's failure to report or pay the contributions is a breach of the CBA and a violation of ERISA § 515, 29 U.S.C. § 1145. The undersigned therefore

1  recommends that Plaintiffs' request for $77,220.93 in unpaid contributions, liquidated

2  damages, and interest be granted in full.

3  **IV.     Attorney's Fees and Costs**

4        Where a party is entitled to reasonable attorney's fees by either contract or statute, the

5  court will determine the amount to be awarded based on reasonable billing rates and time

6  spent. *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (referring to this

7  quantum of reasonableness as the "lodestar").   ERISA also provides for recovery of

8  reasonable attorney's fees and costs within the discretion of the Court.  29 U.S.C. §

9  1132(g)(2)(D).

10        Pursuant to the CBA, Defendant agreed to pay reasonable attorney's fees, auditor's

11  expenses, and costs associated with a default.  (Dkt. No. 14, Ex. B § 12.1.06.)  Plaintiffs'

12  Motion requests $3,722.50 in attorney's fees.  To substantiate their fees and costs, Plaintiffs'

13  counsel included a declaration detailing the fees. (Dkt. Nos. 15 ¶ 9.)  The amount of fees is

14  based on work performed by Michele R. Stafford (5.3 hours at $210.00 per hour), Muriel B.

15  Kaplan (1.2 hours at $215.00 per hour), Blake E. Williams (0.7 hours at $205.00 per hour),

16  and 18.4 hours of paralegal work at $120.00 per hour.  (*Id.*)  The Court concludes that the

17  time incurred and billing rates are both reasonable.  Plaintiffs' counsel further requests $1,260

18  in "additional" attorney's fees that it estimates will be incurred after the execution of the

19  declaration accompanying the Motion.  Specifically, counsel requests 6 additional hours of

20  attorney and paralegal time for electronically filing documents, service on Defendant,

21  preparation, attendance, and travel to and from hearing, review of the Judgment entered,

22  service of same, preparation of and recording Abstracts and a Judgment Lien, and in the

23  preparation of a Writ of Execution for issuance by the Court.  (*Id.*)   Because the Court is

24  vacating the hearing on Plaintiffs' motion, the Court concludes that Plaintiffs' request for fees

25  related to the hearing is moot.  The Court does conclude that the three additional paralegal

26  hours are justified and recommends that they be awarded.  The undersigned accordingly

27  recommends that Plaintiffs' request for attorney's fees be awarded in the amount of

28

$4,082.50, which includes $360.00 for additional paralegal time following preparation of the underlying motion.

Plaintiffs' cost request of $752.50 includes costs for filing fees ($350.00), personal service ($186.00 x 2 = $372.00), and a messenger fee ($30.50). (Dkt. No. 15 ¶ 11.) Under Civil Local Rule 54–3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred." In addition, the CBA provides for the recovery of all expenses incurred in collection. (*See* Dkt. No. 14, Ex. B § 12.13.06.) Therefore, it is recommended that all costs be awarded in full.

## CONCLUSION

Based on the foregoing, the Court recommends that Plaintiffs' Motion for Default Judgment (Dkt. No. 13) be GRANTED as to Defendant LML and DENIED as to Defendant Lyons. The Court recommends that judgment be entered in favor of Plaintiffs, and that Plaintiffs be awarded a total of $77,220.93 in unpaid contributions, liquidated damages, and interest, $4,082.50 in attorney's fees, and $752.50 in costs. As Plaintiffs have not requested an audit, the Court recommends that the district court decline to retain jurisdiction over this matter.

Plaintiffs shall serve a copy of this report and recommendation on Defendants within three days from the filing date of this report and recommendation and shall file a proof of service with this Court.

Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's ultimate Order.

**IT IS SO ORDERED.**

Dated: September 25, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE